**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUAN MARTINEZ,** | : | **Civil No. 3:12-CV-1547** |
| | : | |
| **Plaintiff** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **SGT. B. JONES, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

This is a *pro se* action brought by Juan Martinez, an inmate in the custody of the Pennsylvania Department of Corrections.  The action centers around a violent confrontation that Martinez had with corrections officers at the State Correction Institution at Camp Hill on March 28, 2010.

Martinez alleges that on that day, after being ordered to return to his cell from recreation following a verbal exchange with Sergeant Jones, he was subject to an unprovoked and brutal assault by Jones, who was later joined by other staff in the attack inside Martinez's cell.  Martinez also claims that other officers were present, witnessed him being assaulted while handcuffed and on the ground, and did nothing to intervene.  Martinez claims that he suffered significant injuries as a result of this incident, including lacerations to his face, closed eyes, and extensive bruising. Martinez also alleges that afterward he was subject to coordinated retaliation by other

corrections officials as a result of this incident, by being falsely charged and found guilty of serious institutional misconduct, and by being deprived of one or more meals following the affray.  Further, Martinez alleges that the hearing officer who oversaw his prison disciplinary proceedings following the incident violated his right to due process, and that other corrections officials should be held liable because they knew that the officers had a penchant for assaultive behavior and did nothing to curb their conduct.

The defendants present a considerably different picture of what occurred.  The defendants maintain that it was Martinez who verbally challenged and then attacked Sergeant Jones inside his cell, and was thereafter restrained appropriately by other officers who used only the amount of force necessary to subdue him.  Apparently based on the results of their own investigation into the incident – which was, unfortunately, not aided by video evidence due to problems that were experienced during the recording – the defendants insist that no jury could view this matter in Martinez's favor, and that summary judgment on Martinez's Eighth Amendment claim is thus compelled based on the evidence that they developed during their own institutional investigation.  The defendants also argue that Martinez's retaliation claims fail because he failed to exhaust administrative remedies with respect to these claims, or because the retaliation alleged is insufficient to support a claim under

federal law.  With respect to his claims alleging his right to due process was violated, the defendants argue that Martinez's claims fail because there is no dispute that there was evidence to support the hearing officer's decision finding Martinez committed misconduct, and in any case the sanction imposed did not rise to the level of a constitutional violation but was, in fact, reasonable.  Finally, the defendants seek entry of summary judgment on behalf of several officials or officers who they claim had no personal involvement in any of the violations alleged.

## II.   **BACKGROUND**

Summarizing the undisputed facts of this case is difficult, since the parties have offered starkly competing versions of the events that underlie Martinez's claims. Unlike many such cases however, in this action Martinez has supported many of his allegations with sworn attestations about the event from his perspective, as well as the perspective of two other inmates.  Below we review the salient facts, some of which are genuinely undisputed, but also highlighting the many instances where the parties disagree about what exactly transpired in Martinez's cell on March 28, 2010, and afterward.

Martinez is a former inmate at SCI-Camp Hill.  (Compl. ¶ 2.)  On his way to the yard on March 28, 2010, Martinez was involved with a verbal exchange with Sergeant Jones.  (Compl. ¶ 37.)  Jones ordered Martinez to return to his cell, and

Defendant Jones accompanied him and entered the cell.  (Id.)  The parties dispute who engaged whom, but there is no dispute that a physical altercation between the two men ensued and that Martinez's cell mate was not present.  (Id.)  After the altercation was underway, Defendants Cooksey and Ayers arrived and entered the cell to intervene.  (Compl. ¶ 38; Def. Statement of Facts ¶ 7.)  Although the incident was brought under control after the officers arrived, there is no dispute that Martinez and Defendant Jones suffered physical injuries from the affray.  (Def. Statement of Undisputed Facts ¶¶ 4-5.)  The parties sharply diverge on what exactly happened within Martinez's cell.

Following the incident, officers filed a misconduct report against Martinez, identified as Misconduct B110509.  (Def. Statement of Facts ¶ 6.)  Prison officials opened an investigation into the matter, which Martinez claimed Sergeant Jones instigated.  Officials were unable to corroborate Martinez's version of the events, and instead found that the evidenced gathered showed that it was Martinez who initiated the fight, which then necessitated the intervention of other staff to get the matter under control.  (Id. ¶ 4.)  Prison officials also concluded that any injuries that Martinez sustained were the result of resisting the officers who came to Defendant Jones's aid.  (Id. ¶ 5.)  Martinez was, accordingly, found guilty of assault.  (Id. ¶ 6.)

Contrary to the plaintiff's allegations, the defendants rely on findings that they

reached as a result of their own investigation. That investigation found that Defendants Simpson and Arbogast were not present in Martinez's cell during the incident and, in Simpson's case, were assigned elsewhere. (Id. ¶ 7.) The investigation also found that Martinez had engaged in past assaultive behavior as an inmate, both against a corrections officer at a county jail and also against another cellmate.[1] (Id. ¶ 10.) The defendants have thus offered a version of the events surrounding the physical altercation that draws upon the reports of corrections officers and staff who were involved in varying degrees, all of which were consistent with one another. Those versions generally provide that it was Martinez who precipitated the assault, striking Defendant Jones, who responded with appropriate and reasonable force under the circumstances.

Martinez has submitted an affidavit and declaration entirely disputing the defendants' investigation and characterization of the incident. In his affidavit and other supporting materials, Martinez maintains that on March 28, 2010, he was pulled into his cell by Defendant Jones and was thereafter assaulted, prompting Martinez to defend himself. He claims he did not resist being handcuffed and shackled, instead "let his peacable [sic] intentions be known and offered to be handcuffed", after which

---

[1] Specifically, the plaintiff assaulted a staff member at the Lehigh County Prison by kicking him repeatedly, causing the staff member to miss 16 days of work. (Id. ¶ 11.)

he was stomped and punched in his eye and jaw.  (Pl. Statement of Facts ¶¶ 3-7.)

Martinez claims that even while he was lying on the ground, shackled, Defendant

Ayers entered the cell and began "punching him constantly in his right eye."  (Id. ¶

8.)  Martinez attests that he turned his head to avoid further blows, when he begin to

be kicked in his left eye by Defendants Arbogast and Simpson.  (Id. ¶ 9.)  Martinez

claims that Defendants Long, Kinsey and Cooksey witnessed the assault take place

and failed to intervene.  (Id. ¶ 11.)  Martinez claims that as a result of the assault, he

received lacerations above both eyes; that his right eye was swollen shut; his nose

was bloodied; and that he later had to be sent out for further medical treatment.  (Id.

¶ 12.)  Martinez relies not only on his own affidavit and declaration, but also on

sworn statements offered by two other inmates, as well as SCI-Camp Hill medical

records and pictures of his injuries.  (Id.)

Martinez claims that after the incident, Defendants Snooks and Simpson denied

him a meal, and that Defendant Francis destroyed unidentified property that the

plaintiff owned in retaliation for Martinez's exercise of constitutionally-protected

conduct – apparently, what Martinez avers is a right to self-defense.  (Id. ¶¶ 13-14.)

Martinez attests that he informed Defendant Reisinger, the hearing officer, that

he had acted in self-defense, to which Martinez claims Defendant Reisinger

responded, "if it was me, I would have rung your little neck."  Martinez states that he

urged Defendant Reisinger to review camera footage, but she refused to review it, claiming that she did not need it to make findings.   Martinez also claims that he wrote to Defendants Murray, Beard, Leggore, Reading, Moore-Smeal, Varner, and Barnacle, asking them to investigate the incident, but all refused; and he suggests that these defendants should be liable for being aware of the other defendants' propensity to engage in unconstitutional conduct.  (Doc. 47-2, Martinez Declaration ¶ 12.)

## III.   DISCUSSION

### A.   Summary Judgment Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).   For purposes of Rule 56, a fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Id. (quoting Anderson, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof.  See Celotex v. Catrett, 477 U.S. 317, 323 (1986).  Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings.  See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56.

### B.      Exhaustion of Administrative Remedies

The Prison Litigation Reform Act requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court. Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013).

In accordance with the PLRA, in order to prevail on this affirmative defense a defendant must show that the prisoner failed to comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought.  See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit

is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury) see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). Where this process entails fact-finding and resolution of factual disputes, summary judgment is inappropriate, but the court may resolve the issue of exhaustion through an evidentiary hearing. As the court of appeals has observed:

> [J]ust as subject-matter jurisdiction, personal jurisdiction, and venue, exhaustion is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." Dillon, 596 F.3d at 272 (emphasis added); see Pavey, 544 F.3d at 741 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to."); cf. McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (likening the doctrine of exhaustion of administrative remedies to "abstention, finality, and ripeness-that govern the timing of federal-court decisionmaking"); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 n. 9, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (describing exhaustion as

a "rule of judicial administration"). . . . . [I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted. See Bryant, 530 F.3d at 1373–74 (holding the district court properly acted as fact finder in resolving conflicting evidence that raised a genuine issue of material fact about whether administrative remedies were available to the prisoner plaintiffs); accord Messa, 652 F.3d at 309; Dillon, 596 F.3d at 271. Matters of judicial administration often require judges to decide factual disputes and the Seventh Amendment is not implicated as long as the facts are not bound up with the merits of the underlying dispute.

Small v. Camden Cnty., 728 F.3d 265, 269-70 (3d Cir. 2013)

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. Woodford, 548 U.S. at 95. However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." Small v. Camden Cnty.,

728 F.3d 265, 273 (3d Cir. 2013).

In this case, we are presented with an exhaustion defense with respect to Martinez's claims that his disciplinary proceedings were retaliatory and lacking in due process, but we are presented with a record that is in conflict. The defendants have urged the Court to enter judgment in their favor on a number of claims that they contend are unexhausted because Martinez failed to file his first, second and third-level grievances in accordance with the time requirements prescribed by the DOC. Martinez maintains that he submitted his grievances and appeals timely, but contends they were mishandled or delayed in their delivery, which interfered with their timely filing.

Because there is clear conflict in the record regarding this particular exhaustion defense, we do not see our way to the defendants' assertion that Martinez's claims can and should be disposed of at summary judgment on this ground. However, as will be discussed below, we find that Martinez's retaliation and due process claims fail on other substantive grounds, and thus find it unnecessary to further address and resolve any conflict that may exist with regards to whether Martinez's grievances and appeals were timely.[2]

## C.   Martinez's Retaliation Claims Fail Because There is No Evidence

---

[2] The defendants have not argued that Martinez's Eighth Amendment claims – which are really the core of this dispute – are unexhausted.

### that Martinez Engaged in Constitutionally-Protected Conduct

Martinez has claimed that following his physical altercation with Sergeant Jones, he was subjected to a campaign of retaliatory conduct on the part of other corrections officers or officials. Martinez claims that this retaliation came in the form of trumped up misconduct filings and eventual sanctions, by the assertion that he was not provided with a meal, and that some of his personal property was destroyed. We find that Martinez's claims fail here, however, because they are predicated on the misguided assertion that he had engaged in the conduct of "self-defense" – something Martinez seems to suggest is entitled to constitutional protection. He is wrong.

Unlike in the more familiar context of First Amendment retaliation, where an inmate contends that he suffered retaliation for engaging in petitioning activity or for engaging in free speech or religious practice, here Martinez maintains that he was retaliated against by other officers because he defended himself against what he alleges was assaultive conduct by Sergeant Jones. Martinez's characterization of what happened during this incident was investigated by prison officials, who determined that his version was not credible, and who found that it was in fact Martinez who initiated the assault on Sergeant Jones that then necessitated other corrections officers to intervene to quell the melee. However, assuming for the point of argument that Sergeant Jones had been the assailant, and that Martinez engaged

in some form of self defense as a result, there is no legal basis for the proposition that self-defense is entitled to constitutional protection for purposes of a retaliation claim, and hence there is no basis for a legal claim that the defendants' alleged adverse actions against Martinez were actionable as "retaliation".

A prisoner alleging that prison officials have retaliated against him for exercising protected constitutional rights must prove the following: (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected interest was a substantial or motivating factor in the decision to discipline him. Carter v. McGrady; 292 F.3d 152, 157-58 (3d Cir. 2002); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Once a prisoner has made out a prima facie case of retaliation, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334.  In such cases, the Supreme Court has emphasized that courts should remain mindful that "decisions of prison administrators are entitled to great deference." Carter, 292 F.3d at 158 (citing cases).  Accordingly, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S.

14

520, 547 (1979).

In this case, Martinez seems to assume that an inmate has a constitutionally protected right to engage in physical confrontations with corrections officers if, from the inmate's perspective, the corrections officer was the physical aggressor. Without considering the merits of this particular view, we simply note that we find no legal support for the notion that an inmate engaging in physical confrontation with a corrections officer (even in self-defense) is constitutionally-protected activity. Hence, Martinez's claims for retaliation fail at the outset because he has not shown that he engaged in activity that warrants constitutional protection, and therefore any retaliation claim based upon that asserted conduct fails as a matter of law.

Furthermore, the entire premise of Martinez's retaliation claim fails for another fundamental reason: there is no evidence that prison officials subjected him to adverse action because Martinez engaged in "self-defense". Rather, the evidence shows only that Martinez was given a misconduct charge on the grounds that he had assaulted Sergeant Jones, and this charge was investigated and Martinez was found guilty and sanctioned.

To the extent that Martinez argues that this retaliation consisted of the filing of disciplinary charges against him by the defendants this claim fails for at least two reasons. First, as the United States Court of Appeals for the Third Circuit has aptly

observed: "[F]iling [allegedly] false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See, e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). In addition, as we discuss below, Martinez was found guilty of these disciplinary infractions, and there was ample evidence to support that finding of guilt.   While filing misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim will fail whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010).

In short, nothing about this disciplinary process supports Martinez's view that

the entire course of alleged retaliation was followed because he engaged in "self-defense"; the process was instituted because Martinez was charged with assaulting an officer.  Although Martinez disagrees with that assessment of the incident and his role in it, he has no evidence to suggest that he suffered retaliation because he practiced self-defense.  Summary judgment on this claim is appropriate.

### C.   Martinez's Due Process Claims Relating to the Alleged Destruction of His Property Fail as a Matter of Law

Closely related to his claims of retaliation, Martinez has also alleged that Defendants Jones, Snook, Simpson and Oister destroyed some of his personal property following the incident.  From some of the papers filed, it appears that Martinez is claiming that one or two boxes of his personal property was removed from his cell following the physical confrontation with Sergeant Jones and, apparently, never returned.

The defendants note that Martinez grieved this matter, and his claims were investigated and found to be meritless, since it was determined that Martinez endorsed a personal property form indicating that all of his personal property was accounted for and undamaged shortly after claiming that the destruction had occurred.  (Doc. 36, Ex. C, Grievance Packet 316505.)  Apparently for this reason, and this reason alone, the defendants argue that summary judgment on this claim is

warranted.[3]  We agree that this evidence strongly undermines the plaintiff's due process claims relating to the alleged destruction of property.  However, these claims fail for additional reasons that are even more fundamental.

Inmates are foreclosed from bringing claims under 42 U.S.C. § 1983 to vindicate a property right where adequate post-deprivation remedies exist under state law.  See Hudson v. Palmer, 468 U.S. 517, 532-33 (1984) (intentional deprivation of property); Parratt v. Taylor, 451 U.S. 527, 530 (1981) (negligent deprivation of property).  In Pennsylvania, "the state prison system has established an internal grievance procedure through which the state hears claims and, when appropriate, provides remedies[.]" Mattis v. Dohman, 260 F. App'x 458, 461 (3d Cir. 2008).  In this case, there is no question that Martinez took advantage of this post-deprivation process by filing a grievance relating to the alleged destruction or loss of his personal property.  Regardless of whether Martinez was satisfied with the result of this process – and there is conflicting evidence on this score – "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the

---

[3] The defendants make no additional arguments in support of their motion for summary judgment on this claim.  (Doc. 35, at 10-11.)  The entirety of the argument consists of the following: "This claim was investigated and contemporaneous documentation was produced.  After investigation it was determined that Plaintiff had endorsed a personal property form which indicated that all of his property was present, accounted for and un-damaged shortly after claiming the destruction occurred."  (Id.)

procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  Hudson, 468 U.S. at 533; see also Monroe v. Beard, F.3d 198, 210 (3d Cir. 2008); Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000) (holding that county prisoner had adequate post-deprivation remedy through a grievance system that permitted prisoners to complain about "any" matter that is "unjust" and provided for direct appeal to the warden).

The Department of Corrections has instituted a grievance process identified as DC-ADM 804, entitled "Inmate Grievance System," which provides that "[i]f an inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance."  Courts in this district have repeatedly found that this policy is constitutionally adequate to provide inmates with meaningful post-deprivation remedies.  See, e.g., Tarselli v. Harkleroard, Civ. A. No. 10-1266, 2012 WL 603219, at *6 (W.D. Pa. Feb. 23, 2012); McEachin v. Beard, 319 F. Supp. 2d 510, 514-15 (E.D. Pa. 2004) ("[T]he DOC prison grievance system has been recognized by courts in this Circuit as providing adequate post-deprivation remedies to inmates in satisfaction of the Due Process Clause").  Moreover, the failure of prison officials to provide what the inmate deems to be a favorable response to a grievance does not demonstrate that the process was

inadequate or constitutionally deficient.  See Morales v. Beard, Civ. A. No. 09-162, 2009 WL 2413425 (W.D. Pa. July 31, 2009); McEachin, 319 F. Supp. 2d at 515; Austin v. Lehman, 893 F. Supp. 448, 454 n.4 (E.D. Pa. 1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.").

In this case, the evidence indicates both that the plaintiff had access to what the courts have determined is an adequate post-deprivation remedy available to him through the prison grievance system, and he has not come forward with facts to demonstrate that this system was actually not a meaningful remedy, regardless of whether he was satisfied with the outcome – which, in any event, some evidence suggests he was.  For these reasons, the defendants are entitled to summary judgment on the plaintiff's due process claims relating to the alleged destruction of his property.

**D.     Martinez's Claims Against Defendant Reisinger for Alleged Due Process Violations or Retaliation Relating to his Disciplinary Hearing and Sanction Fail as a Matter of Law**

Martinez has attempted to bring claims against Defendant Reisinger for due process violations or retaliation relating to the disciplinary proceedings that were instituted after the incident. Martinez was found guilty of this misconduct after an investigation, and he received disciplinary custody as a sanction.  Martinez essentially

now asks this Court to sit in review of Defendant Reisinger's conduct of disciplinary proceedings, which Martinez believes was somehow unconstitutional. The defendants have argued that these claims are unexhausted, but these claims also fail for additional reasons.

As an initial matter, in analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Protected liberty or property interests generally arise either from the Due Process Clause or from some specific state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972). However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the*

> *ordinary incidents of prison life*.' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors:  1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and therefore do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). See, e.g., Dunbar v. Barone, 12-1337, 2012 WL 2775024 (3d Cir. July 10, 2012)(held, inmate placed in disciplinary custody for 540 days (about eighteen months) as a result of his misconduct. He did not present any evidence that the conditions he faced in disciplinary custody amounted to an "atypical and significant hardship" under Sandin, and we have held that this type of confinement does not constitute an "atypical and significant hardship." citing Griffin v. Vaughn, 112 F.3d 703, 705–07 (3d Cir.1997) (ruling that fifteen months in segregation was not an atypical and significant hardship)); Arango v. Winstead, 352

F. App'x 664, 666 (3d Cir. 2009)(held, placement in administrative segregation for days or months at a time or transfers to more restrictive custody do not implicate a protected liberty interest, citing Torres, 292 F.3d at 150; Fraise v. Terhune, 283 F.3d 506, 522-23 (3d Cir.2002)); Henderson v. Kerns-Barr, 313 F. App'x 451, 452 (3d Cir. 2008)(90-day disciplinary confinement did not implicate a liberty interest). Therefore, as a threshold matter, to the extent that he advances a due process argument, Martinez has not articulated a sufficient liberty interest to trigger a valid due process claim in this prison setting, and his due process claims against Defendant Reisinger fail.

Martinez makes a second related, retaliation claim against a number of the defendants, alleging that they – allegedly conspiring together – submitted false misconduct reports against him and otherwise took numerous adverse actions against him in retaliation for his past grievances and support of other inmate grievances.

In bringing constitutional claims against correctional officers arising out of these prison disciplinary hearings, Martinez faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of

the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential

standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid § 1983 cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See, e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges; Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings.  As noted, a prisoner claiming that prison officials

have retaliated against him for exercising his constitutional rights by filing a false misconduct report must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim will fail whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010).

In this case, there was plainly substantial evidence to show that Martinez was

guilty of the offense charged.  Defendant Reisinger investigated the charges, and statements were obtained from numerous witnesses and participants that supported a finding of misconduct.  Because there was substantially more than "some evidence" to support the charges, and because Martinez has not otherwise supported his due process and retaliation claims relating to the misconduct proceedings, summary judgment is warranted.

> **E.    Martinez's Claims Against Defendants Murray, Beard, Reading, Moore-Smeal, Varner and Barnacle Should Be Dismissed Because he has Not Demonstrated that any of the Defendants had Personal Involvement in this Matter**

Martinez has also sued a number of individual defendants who hold positions within the Department of Corrections, but who are not alleged to have had any personal involvement in the conduct alleged in this case, apparently based solely on Martinez's unfounded assumption that these individuals must have known about the defendants' alleged penchant for assaultive behavior, or for failing to respond to his requests that they investigate the matter further.  These claims fails as a matter of law because they are no more than an attempt to impose liability based upon *respondeat superior* – something that is not permitted in this area of law.

Martinez's efforts to hold prison and corrections supervisors responsible for the alleged misdeeds of their subordinates fails.  We liberally construe Martinez's claims as being grounded in a theory that the supervisory defendants failed to

supervise other corrections officers, or to respond appropriately in this case.   The courts have fashioned an exacting test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise.   Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).   These approaches are summarized as follows:

> In sum, to make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk that Whetzel posed, the plaintiffs must meet the test from Farmer v. Brennan: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, Sample's four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

Id.

   In this setting the Third Circuit has noted that, in order to defeat a motion for

summary judgment, a plaintiff alleging deliberate indifference on the part of prison supervisors "must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." Id. at 132. However, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

> In particular, with respect to prison supervisors it is well-established that: "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

Thus, in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of supervisory prison officials "must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." <u>Id.</u> at 132. Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. For example, in <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, *21 (W.D. Pa. Jan. 11, 2008), the court rejected an effort to hold supervisors liable for the acts of staff holding that:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  Id.  <u>See also Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).  Moreover, in order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations.  <u>See Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Similarly, in <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004), the court rejected an effort to extend civil rights liability to supervisory officials without proof of personal involvement or acquiescence in wrongdoing, stating:

> Third Circuit case law recognizes that "(a) defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable. <u>Sutton v. Rasheed</u>, 323 F.3d 236, 249 (3d Cir.2003) (citing <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)). Consequently, a supervisor may be liable under 42 U.S.C. § 1983 for his or her subordinate's unlawful conduct if he or she directed, encouraged, tolerated, or acquiesced in that conduct. <u>See Blanche Road Corp. v. Bensalem Twp.</u>, 57 F.3d 253, 263 (3d Cir.1995); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir.1995). However, the mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability. <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir.1989). Likewise, a supervisor's mere failure to train, supervise or discipline subordinate officers does not state a basis for a § 1983 claim against the supervisor absent proof of direct participation by the superior in some unlawful conduct. <u>Mobley v. City of Atlantic City Police Dept.</u>, No. Civ. A. 97-2086JBS, 2000 WL 363692 at *3 (D.N.J. March 30, 2000) (citing <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1119-20 (3d Cir.1990)).

In this case, Martinez has not come forward with sufficient evidence to show that any of these supervisory defendants, who admittedly had no personal involvement in the conduct alleged, had any actual knowledge of, or acquiesced to, or otherwise aided in the commission of a wrong. Instead, he has included claims

against these defendants as a result of unfounded assumptions that these defendants had prior knowledge of other defendants' propensity to engage in misconduct or assault, or otherwise that they failed adequately to investigate Martinez's claims.  As the foregoing makes clear, such unsupported allegations fall well short of what is required for these claims to go forward, and summary judgment in favor of Defendants Murray, Beard, Reading, Moore-Smeal, Varner and Barnacle should be entered.

### F. Summary Judgment is Not Warranted on Plaintiff's Claims for Excessive Force Against Defendants Jones, Cooksey, Ayres, Arbogast, Simpson, Kinsey, and Long

Finally, we consider what the defendants made as their first argument: whether the corrections officers who were involved in some degree in the affray in Martinez's cell on March 28, 2010, are entitled to summary judgment.  The defendants insist that summary judgment is appropriate, but they do so by relying almost exclusively on the results of their own investigation and conclusions reached as a result. The defendants argue that the information they have supplied is so overwhelming in their favor that no reasonable jury could possibly find in Martinez's favor or believe his version of the events, in which he casts himself as a victim of an assault that was started by Sergeant Jones, and in which the other named defendants actively joined  or otherwise failed to stop despite knowing that Jones had been the aggressor and that

Martinez was peaceably agreeing to submit.

As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.
>
> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

Eighth Amendment excessive force claims entail a showing of some subjective intent to injure. In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Thus, the keystone to analysis of an Eighth Amendment excessive force claim often entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). However, the issue of whether excessive force was used is one which, in proper circumstances, can be determined as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was

used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"   Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

In keeping with these guidelines, the Third Circuit has specifically found that "[p]unching and kicking someone who is handcuffed behind his back and under the control of at least six prison guards as he is being thrown into cabinets and walls is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances

necessary to justify that kind of force." <u>Smith v. Mensinger</u>, 293 F.3d 641, 649 (3d Cir. 2002) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 10 (1992)).

The Third Circuit has also explained that officers have a duty to take reasonable steps that are necessary "to protect a victim from another officer's use of excessive force, even if excessive force is employed by a superior." <u>Id.</u> at 650. Thus:

> The duty to uphold the law does not turn upon an officer's rank. It is neither affected by, nor proportional to, a non-intervening officer's relationship to an offending colleague. The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows. Such silence is an endorsement of the constitutional violation resulting from the illegal use of force.

<u>Id.</u>

Turning to this case, notwithstanding the defendants' insistence that their version of the events is overwhelming and compels judgment in their favor, the record also contains evidence from Martinez, including an affidavit and declaration of the plaintiff in which he attests that Sergeant Jones entered his cell and grabbed him around the neck before punching him several times in his eye and jaw. (Doc. 47-2, Martinez Decl. ¶ 4.) Martinez concedes that he struck Jones in response, but claims it was in self-defense, and that after doing so he asked Jones if he was okay before dropping to the ground to be cuffed by other officers who had responded to the

commotion.  (Id.)  Martinez claims at this point that Sergeant Jones ordered for other responding officers to "fuck him up", which resulted in Martinez being tackled to the ground.  (Id. ¶ 5.)  Martinez claims he did not resist, placed his hands out to be cuffed, and was then shackled.  He claims at this point, while defenseless, Sergeant Jones began to stomp and punch him before being joined by Defendant Ayres, who Martinez claims began punching him as well.  Martinez claims that Defendants Arbogast and Simpson joined in the assault by kicking and punching him while he was handcuffed on the ground.  Martinez attests that Defendants Long, Kinsey and Cooksey witnessed the assault and did nothing to stop it.  (Id.)  Martinez's version of the events is corroborated to some degree by an affidavit filed by Carlos Rodriguez, another inmate who claims to have witnessed part of the assault.  (Doc. 47-2, Rodriguez Aff.)  In addition, another inmate named Melvin Saunders has provided an affidavit in which he claims to have witnessed Sergeant Jones grab Martinez around the throat and drag him inside the cell in which the incident occurred.  (Doc. 47-2, Saunders Aff.)

Upon consideration, we do not find that the record as it currently stands warrants entry of summary judgment on behalf of Defendants Jones, Ayres, Arbogast, Simpson, Long, Kinsey or Cooksey because there are disputed issues of fact that exist with respect to who instigated the affray, and whether more force than was necessary

was applied under the circumstances, and whether any of the officers who were present and not involved in the scuffle had a duty to step in any put a stop to it.[4] Taking the evidence in the light most favorable to Martinez, as we are legally required to do, and resolving inferences in his favor as we must at this stage of the litigation, we find that there remain disputed issues of fact that should preclude the entry of summary judgment on these Eighth Amendment claims, which should await resolution by a jury.

## IV.    RECOMMENDATION

Accordingly, for the foregoing reasons, it is respectfully recommended that the defendants' motion for summary judgment be GRANTED as to all claims except for the plaintiff's claims of excessive force brought against Defendants Jones, Ayres, Arbogast, Simpson, Long, Kinsey or Cooksey.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the

---

[4] In reaching this conclusion, we recognize that the claims Martinez have brought are extremely serious and potentially damaging to the officers involved. We make no findings whatsoever as to the veracity of Martinez's account. To the contrary, we simply note that the record as it currently stands presents starkly competing factual narratives regarding what happened within Martinez's cell, and what happened prior to the conclusion of the affray. Such matters should be resolved by a factfinder at trial and not at summary judgment.

disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of December, 2015.


_S/Martin C.  Carlson_____
Martin C. Carlson
United States Magistrate Judge